IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| THOMAS R. DODGE, ) | |
| ) | |
| Plaintiff, ) | Civil No. 06-6046-HO |
| ) | |
| v. ) | ORDER |
| ) | |
| UNION PACIFIC RAILROAD COMPANY, ) | |
| a Delaware corporation, ) | |
| ) | |
| Defendant. ) | |

Plaintiff brings this action for violations of the Federal Employer's Liability Act (FELA) and the Federal Locomotive Inspection Act (LIA).

On April 29, 2003, Defendant Union Pacific Railroad Company employed plaintiff as an engineer. On that date, plaintiff engineered a train required to stop at night at a passing track at Wiccopee after leaving Eugene, Oregon to allow an oncoming train to pass.

At the stop, plaintiff alleges it was very dark and that there was no lighting at the siding. Plaintiff exited through the rear door behind the engineer's seat to inspect one of the units.

Plaintiff alleges he suffered permanently disabling injuries resulting from losing his balance while moving through the darkened exit leading onto an outside catwalk from the crew cab. Plaintiff alleges defendant was negligent under the FELA in failing to provide sufficient lighting and for failing to post a warning sign that there were steps outside the cab's rear door. Plaintiff also alleges that defendant violated the LIA because of the lack of lighting and warning sign. Defendant moves for summary judgment on both claims contending that the LIA regulations do not require it to install lighting to illuminate the steps outside the cab door or post warning signs about the location of the steps. Defendant also contends that the LIA precludes the FELA negligence claim.

## DISCUSSION

The locomotive model on which plaintiff was working on April 29, 2003, had steps outside the rear door of the cab that led to a platform, with a handhold on the left side of the door. Plaintiff contends that he was not familiar with the particular step configuration used on the locomotive. When plaintiff exited through the rear door of the cab to inspect another unit during a stop, he used his right hand to open the door and put his left hand on the grab iron. Plaintiff fell on the steps, but caught himself by holding the grab iron. Plaintiff had a flashlight, but there were no lights on the side of the train. The door did not have a sign warning of the steps. Plaintiff did not expect the steps and

2 - ORDER

claims he severely injured his shoulder as a result. Plaintiff contends that the previous locomotives he worked on had a platform outside the engineers door that extended for 12 feet before the steps went down.

After plaintiff filed a response to the motion, plaintiff filed a motion to amend the complaint. The allegations regarding failure to post a warning sign have been dropped. Plaintiff adds additional allegations of negligence.

A.   Motion to Amend (#34)

Plaintiff's proposed amended complaint "amplifies" on the basis for FELA liability. Plaintiff adds further allegations regarding the lighting and adds an allegation that the cab passageways and compartments were in violation of 49 C.F.R. Regulation Nos. 229.7(a) and 229.127 because of the inadequate illumination.

Plaintiff also adds allegations regarding the condition of the locomotive which allegedly prevented use without unnecessary peril to life and limb. Plaintiff bases these allegations on the lack of lighting and lack of training and instruction as to the use of the style of exit incorporating the outside steps. Plaintiff adds allegations regarding the lighting at the location in addition to the lighting on the train itself. Plaintiff further adds allegations regarding ergonomic standards for safe industrial lighting and step design, and allegations regarding lack of

3 - ORDER

training. In the response to the summary judgment motion, plaintiff presents expert testimony that the location of the handrail was unsafe, the location of the grab iron was unsafe, the stairway slope violated OSHA requirements, the riser heights were excessive, the stair tread depth violated OSHA requirements and that the lighting violated OSHA regulations.[1]

These new allegations were not disclosed in discovery prior to the summary judgment motion and are not the subject of the summary judgment motion. Accordingly, defendant objects to the proposed amended complaint as unfairly prejudicial and an improper attempt to circumvent summary judgment. Defendant complains that if amendment is allowed it will have to conduct further discovery and reopen plaintiff's deposition.

Plaintiff notes that it was information provided by his expert that identified additional bases of FELA and LIA liability and consequently led to the motion to amend. Plaintiff asserts that the motion to amend is not an attempt to avoid summary judgment and plaintiff believes summary judgment should be denied even as to the original complaint. Discovery remains open and only plaintiff's deposition, that of one crew member and one company officer have been taken. Defendant has only taken plaintiff's deposition at this point. No expert discovery has taken place.

---

[1] OSHA does not apply in this case. See 29 C.F.R. § 1910.34(b)(applies to workplaces in general industry except mobile workplaces).

4 - ORDER

The motion to amend is allowed because substantial discovery has yet to take place. While it is true that plaintiff's deposition did not reveal the new allegations raised in the amended complaint and thus may have made the summary judgment motion unnecessarily premature, the basis of the new allegations is expert evidence and that discovery has yet to take place. The expert opinion has been disclosed to defendant and defendant had a representative present during the inspection by plaintiff's expert.

B.   Motion for Summary Judgment(#20)

Because plaintiff dropped the claim of negligence with regard to lack of a warning sign, the motion for summary judgment on that issue is denied as moot.

The issue of negligence based on lack of lighting is present in both complaints. Accordingly, the court will address that portion of defendant's motion for summary despite amendment of the complaint upon which summary judgment is directed.

The FELA provides that

> Every common carrier by railroad while engaging in commerce between any of the several States ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury ... resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51.

5 - ORDER

The LIA (formerly the Boiler Inspection Act) supplements the FELA by imposing on interstate railroads 'an absolute and continuing duty' to provide safe equipment. Urie v. Thompson, 337 U.S. 163, 188 (1949).

> [The LIA is] substantively if not in form amendments to the Federal Employers' Liability Act. [It] dispense, for the purposes of employees' suits, with the necessity of proving that violations of the safety statutes constitute negligence; and making proof of such violations is effective to show negligence as a matter of law. Thus taken, as has been the consistent practice, the [LIA] cannot be regarded as [a] statute[] wholly separate from and independent of the Federal Employers' Liability Act. [It is] rather supplemental to it, having the purpose and effect of facilitating employee recovery, not of restricting such recovery or making it impossible.

Id. at 189.

The LIA and FELA are understood in this way as effectively one statute under which certain duties to keep all parts and appurtenances of locomotives in proper condition and safe, precluding other causes of action for negligence with respect to railway safety for railroad employees. Under the LIA, the Federal Railway Administration (FRA), pursuant to authority granted by the Secretary of Transportation, promulgates regulations regarding safety. The Supreme Court's decision with respect to an alleged improperly maintained device placed on a train that was not specifically regulated pursuant to LIA, is instructive with respect to preclusion of general FELA claims post-LIA:

> The accepted doctrine is that the act imposes upon the carrier an absolute and continuing duty to maintain the locomotive, and all parts and appurtenances thereof, in proper condition, and safe to operate in active service

6 - ORDER

> without unnecessary peril to life or limb. Also that, after proper inquiry, the Interstate Commerce Commission may 'prescribe the rules and regulations by which the fitness for service shall be determined.'
> ....
> [I]t cannot be said that Congress intended that every gadget placed upon a locomotive by a carrier, for experimental purposes, should become part thereof within the rule of absolute liability. So to hold would hinder commendable efforts to better conditions and tend to defeat the evident purpose-avoidance of unnecessary peril to life or limb. Whatever in fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the Interstate Commerce Commission, are within the statute. But mere experimental devices which do not increase the peril, but may prove helpful in an emergency, are not. These have not been excluded from the usual rules relative to liability.

Southern Ry. Co. v. Lunsford, 297 U.S. 398, 401-02 (1936).

Plaintiff may not rely on general theories of negligence in asserting a FELA violation. C.f., Waymire v. Norfolk and Western Ry. Co., 218 F.3d 773, 775-77 (7th Cir. 2000) (While FELA as a general negligence statute neither prohibits nor requires specific conduct by a railroad, the regulation pursuant to the FRSA regarding speed and signs supersede unsafe speed claims and inadequate warning signs claims at crossings pursuant to FELA); See also Felt v. Atchison, Topeka & Santa Fe Ry. Co., 60 F.3d 1416, 1419 (9th cir. 1995) (inquiry into preclusion of federal statutory remedies is similar to inquiry into preemption of state law).[2]

---

[2] Plaintiff argues that lack of a LIA violation does still permit claims under FELA. The better reasoning is that compliance with LIA regulations and standards precludes a FELA action because the Supreme Court has stated that LIA occupies the entire field of locomotive safety. Napier v. Atlantic coast Line R.R. Co., 272 U.S. 605, 611-13
(continued...)

7 - ORDER

The LIA prohibits railroads from operating any locomotive unless the locomotive or tender and its parts and appurtenances-

> (1) are in proper condition and safe to operate without unnecessary danger of personal injury;
>
> (2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and
>
> (3) can withstand every test prescribed by the Secretary under this chapter.

49 U.S.C. § 20701. The Supreme Court has held that "[w]hatever in fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of [the Secretary], are within the statute." Southern Ry. v. Lunsford, 297 U.S. 398, 402 (1936). In light of Lunsford, a carrier cannot be held liable under the LIA for failure to install equipment on a locomotive unless the omitted equipment (1) is required by federal regulations of the Secretary, or (2) constitutes an integral or essential part of a completed locomotive. See Mosco v. Baltimore & O.R.R., 817 F.2d 1088, 1091 (4th Cir. 1987). A locomotive or its parts and appurtenances might satisfy federal regulations and still be "unsafe" under the LIA.

---

[2](...continued)
(1926). To permit a jury to impose upon a railroad the duty to equip its locomotive with purported safety features that the FRA has not seen fit to impose undermines the LIA's goal of national uniformity and the authority of the uniquely qualified FRA to assert its expertise regarding such features. Thus, the court declines to follow out-of-circuit case law suggesting FELA causes of actions despite lack of a viable LIA claim. E.g., Mosco v. Baltimore & Ohio R.R., 817 F.2d 1088 (4th Cir. 1987); McGinn v. Burlington Northern R. Co., 102 F.3d 295 (7th Cir. 1996).

8 - ORDER

See id. That occurs when the railroad fails to maintain the locomotive or its parts and appurtenances so that the locomotive cannot be operated without unnecessary peril to life or limb. However, such a LIA action can only be predicated on failure to maintain integral or essential parts of a completed locomotive and not on failure to add additional safety features not prescribed by LIA.

Plaintiff first argues that defendant violated LIA by failing to comply with 49 C.F.R. § 229.127(b). The regulation requires that "Cab passageways and compartments shall have adequate illumination." The issue here is whether the walking surface outside the rear door of the cab is a "cab passageway."[3]

Construction of the regulation requires the court to consider the context of the regulation. Subsection (a) of 49 C.F.R. § 229.127 provides that

> Each locomotive shall have cab lights which will provide sufficient illumination for the control instruments, meters, and gauges to enable the engine crew to make accurate readings from their normal positions in the cab. These lights shall be located, constructed, and maintained so that light shines only on those parts requiring illumination and does not interfere with the crew's vision of the track and signals. Each controlling locomotive shall also have a conveniently located light that can be readily turned on and off by the persons operating the locomotive and that provides sufficient

---

[3]Plaintiff does offer expert testimony as to statutory construction to arrive at an interpretation of the regulation that requires lights at the outside rear of the cab, but such testimony is inadmissable. Experts may not offer legal conclusions. Questions of law are for the court to decide.

9 - ORDER

> illumination for them to read train orders and timetables.

Cab "means that portion of the superstructure designed to be occupied by the crew operating the locomotive." 49 C.F.R. § 229.5. However, the regulations do not define "passageway."

The Webster's Third New International Dictionary defines passageway as "a way that allows passage to or from a place or between two points: Corridor, Path." Merriam-Webster Online defines passageway "a way that allows passage," and has various definitions of passage including "a way of exit or entrance: road, path, channel, or course by which something passes." Merriam-Webster Online also defines passageway as "a corridor or lobby giving access to the different rooms or parts of a building or apartment."

A reasonable interpretation of "cab passageway" includes the a way of exit or entrance from the cab. Defendant argues however, that such an interpretation is contrary to the FRA's own interpretation which is controlling. The MP&E Safety Standards Compliance Manual provides the following guidance as to section 229.127:

> Section (b) The preamble to this rule states that it was intended to be similar to the former rule, 230.233(b), which includes the qualifier that when employees are required to pass from one cab to another, the platform and passageway between shall be illuminated. There are no passageways on the road-switcher type of locomotives; these are found on the car body type locomotives where people walk inside and illumination is important. Lights that are inside the car body of a road switcher type

10 - ORDER

> locomotive are not to be considered as compartment lights and shall not be taken as a non-complying condition. Where the criteria for a passageway exist, illumination must be provided and the lights maintained. The same is true for the walkway platforms between locomotives found on road-switchers. A flashlight or other hand-held light does not satisfy the requirements of this rule.

http://www.fra.dot.gov/downloads/safety/chapter8229.pdf (at p. 60-61) (also attached to supplemental declaration of Wendy M. Margolis (#40)).

Defendant argues the manual indicates that "cab passageway" was meant to apply to areas and platforms passing from one cab to another or where people walk in inside passageways. However, the manual does not preclude the rear exists or platforms at the rear of cabs from the definition. A reasonable interpretation of the regulation does require adequate illumination of the rear exit of the cab because the rear exit of a cab is indeed a "cab passageway." Accordingly, the motion for summary judgment is denied with respect to plaintiff's claim of negligence arising from the alleged failure to provide adequate lighting.[4]

---

[4] The court has searched for other occurrences of the word "passageway" in the MP&E Safety Standards Compliance Manual and has not found such occurrences to preclude a finding that a way of exit or entrance to the cab cannot be considered a "cab passageway." Although the guidance to regulation 229.119 regarding cabs, floors, and passageways, does make a distinction between "passageways" and "walkways" with regard to accumulations of oil, water, debris and other items, the distinction does not force the conclusion that an exit from cab leading to platform (or perhaps a walkway) is distinct from a passageway.
See http://www.fra.dot.gov/downloads/safety/chapter8229.pdf at p. 52.

11 - ORDER

Because the regulations require adequate illumination, the court does not reach plaintiff's alternative argument that the locomotive was not safe to operate without unnecessary peril to life and limb. The court expresses no opinion as to the adequacy of the additional allegations regarding step configuration, etc., made in the amended complaint.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment (#20) is denied and plaintiff's motion to amend (#34) is granted.

DATED this   10th   day of May, 2007.

                                          s/ Michael R. Hogan
                                        United States District Judge